**United States District Court**
**District of Massachusetts**

```
_____
                                    )
IDEAL HEALTH, INC., LOUIS           )
DECAPRIO, SCOTT STANWOOD, TODD      )
STANWOOD, UIX, LLC and              )
INFOBROKER, INC.,                   )        Civil Action No.
         Plaintiffs,                )        09-10791-NMG
                                    )
         v.                         )
                                    )
DEAN BLECHMAN,                      )
         Defendant.                 )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiffs Ideal Health, Inc. ("Ideal"), Louis DeCaprio ("DeCaprio"), Scott Stanwood, Todd Stanwood, UIX, LLC ("UIX") and Infobroker, Inc. ("Infobroker") brought suit for declaratory judgment against defendant Dean Blechman ("Blechman") seeking 1) a declaration that Blechman's demands lack merit and 2) in the alternative, reformation of a certain shareholders' agreement. After a related case filed by Blechman was transferred to this Court for consolidation, Blechman counterclaimed for 1) declaratory judgments in his favor, 2) the imposition of a constructive trust, 3) access to financial information and 4) recovery for unjust enrichment and "oppression of a minority shareholder". Before the Court is plaintiffs' motion to dismiss four of defendant's counterclaims.

-1-

I.   **Background**

A.   **Factual Background**

This dispute provides a familiar scenario of a once-amicable business relationship which, quite abruptly, turned bitterly contentious. Ideal was founded in 1997 by DeCaprio and Scott and Todd Stanwood (collectively, "the individual plaintiffs"). Ideal distributes and sells health care products, such as nutritional and vitamin supplements, through direct marketing. The individual plaintiffs are officers and directors of Ideal and UIX and Infobroker provide management services to it.

In March, 2007, Ideal hired Blechman to serve as Chief Executive Officer ("CEO"). Pursuant to Blechman's employment agreement, he received a 10% stake in Ideal's outstanding shares as well as a monthly salary and incentives. Because Blechman was allegedly hired to assist the company with its ailing financial condition, he was also eligible to receive additional equity if he secured financing or a capital investment on Ideal's behalf.

Less than one year after he had been hired, the individual plaintiffs concluded that Blechman was not performing his duties as anticipated. In February, 2008, still on good terms, Blechman agreed to resign and the parties executed a Separation Agreement and General Release ("the Separation Agreement"). That agreement provided that Blechman would receive additional Ideal stock, bringing his total share to 13%. Section 2(c) also allowed him

to earn more shares, up to the amount owned by each of the
individual plaintiffs, for "financing secured, directly or
indirectly" or

> in the event that [he] brings an entity to [Ideal] for
> the purposes of entering into an acquisition agreement,
> and/or a change in controlling interest of [Ideal], ...
> upon closing of such a transaction ...

At about the time of his resignation, Ideal was beginning
negotiations with representatives of Donald Trump ("Trump") with
respect to a significant business opportunity.  Blechman alleges
that he was solely responsible for introducing Trump to Ideal
through his contact, Donald Kessler ("Kessler").  At first, the
deal was to involve a transfer of stock to Trump but the parties
ultimately settled on a license agreement.  In March, 2009, TTN,
LLC ("TTN") (an entity owned and controlled by Ideal) entered
into an agreement with Trump through which Ideal gained rights to
Trump's likeness and trademarks and Trump agreed to promote its
products personally.  Ideal, in turn, re-branded itself as "The
Trump Network" and updated all of its product lines accordingly.
The deal has apparently been very lucrative for the plaintiffs
who, according to Blechman, have already experienced a
substantial increase in revenues.

Despite having resigned as CEO, Blechman was initially
involved, at least tangentially, in the dealings with Trump.  At
some point during the negotiations, however, the relationship
between Blechman and the plaintiffs turned sour.  Blechman

-3-

contends that plaintiffs made numerous promises, oral and in writing, before and after execution of the Separation Agreement, that he would become an equal shareholder in Ideal for his efforts with respect to the Trump deal.  Plaintiffs, by contrast, deny that Blechman is responsible for their agreement with Trump and add that, in any event, the Separation Agreement bars Blechman's claims to additional stock.  In line with their respective positions, after the agreement with Trump was finalized, Blechman sought but was refused stock compensation from Ideal.  The conflict quickly expanded to encompass additional disputes and, eventually, Blechman was denied access to any financial information of the company and from communicating with the plaintiffs.

### B.   Procedural History

Fearing either a lawsuit by Blechman or that disruption of their relationship with Trump (or both), plaintiffs filed their complaint on May 14, 2009 seeking declaratory judgments that Blechman is not entitled to any relief.  Less than one week later, Blechman filed suit in the New York Supreme Court for Suffolk County, similarly seeking declaratory and equitable relief against plaintiffs ("the New York case").  After that case was removed to the United States District Court for the Eastern District of New York, plaintiffs moved for a transfer of venue to this Court for consolidation.  Because this action had been filed

first and involved substantially similar issues, their motion was allowed and the case was transferred in November, 2009.

In the meantime, several motions had been filed in this action.  After the New York case was transferred and assigned to another session of this Court, however, the parties entered into a stipulation 1) to dismiss voluntarily the transferred New York case, 2) to withdraw the motions pending in this action and 3) to allow Blechman to file an answer to the complaint in which he could reassert as counterclaims his claims from the New York case.  Blechman filed an answer and counterclaims on March 2, 2010 and plaintiffs filed their motion to dismiss four of those counterclaims shortly thereafter.  Without requesting leave of court, Blechman submitted a late opposition and a memorandum in excess of the page limit.  The Court heard oral argument on the motion on April 16, 2010.[1]

## II.  **Analysis**

### A.  **Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged

---

[1]  That same day, plaintiffs filed a motion for leave to file a reply memorandum in support of their motion.

in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. <u>Nollet</u> v. <u>Justices of the Trial Court of Mass.</u>, 83 F. Supp. 2d 204, 208 (D. Mass. 2000) <u>aff'd</u>, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. <u>Langadinos</u> v. <u>American Airlines, Inc.</u>, 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. <u>See</u> <u>Nollet</u>, 83 F. Supp. 2d at 208.

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not, however, applicable to legal conclusions. <u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. <u>Id.</u> Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. <u>Id.</u> at 1950.

**B.  Application**

Plaintiffs move to dismiss Counts I, IV, V and VI of the counterclaims "to the extent they involve Ideal or Ideal's stock". Count I, which is the focus of the parties' arguments,

seeks a declaratory judgment that Blechman is entitled to a stake in Ideal's stock equal to that of each of the individual plaintiffs.  The remaining counts seek 1) a constructive trust on "all shares in and monies received from Ideal ... that rightfully belong to Blechman" (Count IV), 2) unjust enrichment (Count V) and 3) an accounting of Ideal's distributions, compensation and other payments (Count VI).

Plaintiffs contend that defendant has failed to state a claim for relief because he does not and cannot allege a legally cognizable right to additional Ideal stock for his work on the Trump deal.  Specifically, plaintiffs argue that:

1) Blechman cannot claim a right to stock beyond what was promised in the Separation Agreement, i.e., additional Ideal shares only if he introduces an entity for the purposes of an acquisition or change in control, which the Trump license agreement does not;

2) Any alleged oral promises to the contrary are irrelevant because the agreement can only be amended in writing;

3) Blechman fails to allege specific oral promises by the plaintiffs for an equal share of Ideal stock if Blechman either provides certain financing or the company enters into a license agreement; and

4) Blechman does not assert any justiciable theory of recovery (e.g., breach of contract, fraud or estoppel) in Count I

-7-

nor factual allegations sufficient to render the alleged promises enforceable.

Blechman has numerous responses.  First, he suggests that he has stated a valid claim akin to promissory estoppel for the inequitable conduct of promising equity (i.e., Ideal stock) and then not delivering it.  Such a claim in Massachusetts requires proof that 1) a promise reasonably expected to induce action or forbearance was made, 2) the promise did so and 3) injustice can be avoided only by enforcing the promise.  Blechman argues that he has sufficiently pled such a claim based upon allegations that, inter alia, he was promised orally and in writing that he would be made an equal partner several times, including in documents sent to Trump, and the individual plaintiffs admitted using Blechman's presence, reputation and talents to close the deal with Trump.

Second, Blechman argues that the Separation Agreement does not render his claim "implausible" because there were subsequent and additional specific promises (some of which were in writing) made after the agreement was executed.  Finally, Blechman maintains that the Trump deal is covered by the terms of § 2(c) of the Separation Agreement and that there can be no definitive ruling otherwise prior to discovery.

Blechman concludes that plaintiffs have provided no reason to dismiss Counts IV-VI of his counterclaims which are plausible,

in any case, in light of his

> absolute right as a director of Ideal (and as a
> shareholder of a closely held business) to basic
> financial information about Ideal, its expenses and its
> payments to defendants.

The Court will deny plaintiffs' motion to dismiss Count I of the counterclaim for several reasons. First, Blechman's counterclaim is a mirror image of Count I in plaintiffs' complaint which seeks a declaratory judgment that Blechman is not entitled to additional Ideal stock for his role in the Trump negotiations. Indeed, as Blechman points out, plaintiffs argued that the claims were identical when they sought to transfer the New York case here. Thus, dismissal of Count I of the counterclaim would be inconsequential because the question it raises will be at issue in this case in any event. See Bunge Oils, Inc. v. M & F Mktg. Dev., LLC, No. 03-cv-11559 (GAO), 2005 WL 629489, at *3 (D. Mass. Mar. 15, 2005) ("[The] [c]ounterclaim ... survives the motion to dismiss. It seeks a declaratory judgment concerning [defendant's] contract-based claims and in most respects is the mirror image of [a] count of [plaintiff's] amended complaint.").

To be sure, at oral argument, plaintiffs were quick to ensure that they would promptly drop their affirmative claim if the Court were to allow their motion to dismiss. That proposal, however, smacks too much of gamesmanship. Having used the identicality of their cross-claims to warrant a transfer of

Blechman's case to this Court, plaintiffs will not now be heard to use that condition as a ground for dismissal.  If dismissal of Blechman's claim was plaintiffs' plan all along, they should have stayed in New York and avoided a multiplicity of cases.

The counterclaim Count I survives for other reasons as well. First, Blechman's allegations arguably fall within, not outside, the Separation Agreement's requirement for making him an equal shareholder.  In particular, the Trump transaction can conceivably be labeled as one in which Blechman

> br[ought] an entity [i.e., Trump] to [Ideal] for the purposes of entering into an acquisition agreement, and/or a change in controlling interest.

The fact that the terms of the agreement were altered during lengthy negotiations from a proposed acquisition of stock to a licensing arrangement does not necessarily extinguish Blechman's claim.  Discovery should clarify whether § 2(c) is applicable or not.

Moreover, Count I survives a motion to dismiss by virtue of Blechman's allegations of oral promises and agreements that he would become an equal shareholder.  It is well-settled that even a fully-integrated written contract can be modified by subsequent oral agreement and that such modification may be inferred from the parties' conduct and the surrounding circumstances.  E.g., Cambridgeport Sav. Bank v. Boersner, 597 N.E.2d 1017, 1021-22 (Mass. 1992).  Here, at about the time that the Separation

Agreement was signed, the negotiations with Trump began as a stock acquisition, clearly within the purview of § 2(c). Ultimately, however, the parties negotiated a license. Blechman's allegations can plausibly be read to contend that, through subsequent oral promises and agreements, the arrangement contemplated by the Separation Agreement was transposed into one that would grant him an equal stake in Ideal no matter what structure the Trump transaction took.

It remains to be seen what discovery will reveal beyond the hazy picture of events that can be pieced together from the pleadings.  Suffice it to say that dismissal of Count I is unwarranted at this stage.

With respect to Counts IV-VI, plaintiffs make no arguments specific to those counts, apart from those already considered, and neither will they be dismissed.

### ORDER

In accordance with the foregoing, plaintiffs' motion to dismiss (Docket No. 41) is **DENIED.**


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 6, 2010

-11-